**Angela PACE, Plaintiff,**

v.

**BRISTOL HOSPITAL, Defendant.**

**No. 3:95CV02149(WWE).**

United States District Court,
D. Connecticut.

March 31, 1997.

---

Livingston, Adler, Pulda and Meiklijohn by Thomas W. Meiklejohn, Hartford, CT, for plaintiff.

Siegel, O'Connor, Schiff and Zangari by Richard D. O'Connor, Dana Shaw Mac-Kinnon, Hartford, CT, for defendant.

### RULING ON MOTION FOR PARTIAL SUMMARY JUDGMENT

EGINTON, Senior District Judge.

Plaintiff Angela Pace, has filed a three-count complaint against defendant, Bristol Hospital, alleging claims under the Age Dis-crimination in Employment Act (ADEA), 29 U.S.C. § 621 (Counts One and Two), and a state law claim of invasion of privacy by placing plaintiff before the public in a false light (Count Three). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, defen-dant moves for partial summary judgment on plaintiff's false light invasion of privacy claim. For the reasons set forth herein, defendant's motion will be granted.

### Background

Unless otherwise indicated, the following facts are undisputed. Plaintiff was employed by defendant from 1973 until her termination on June 29., 1993. Prior to termination, plaintiff worked as a registered nurse as-signed to the obstetrics floor and was pri-marily responsible for the care of newborn children and their mothers.

On or about June 23, 1993, a hospital secu-rity guard observed plaintiff sitting in a rock-ing chair in the hospital nursery with an infant on her lap. The security guard be-lieved that plaintiff was asleep and asked another nurse, Lucille Lefebvre, to enter the nursery and investigate. Lefebvre has stat-ed that when she entered the nursery, plain-tiff looked up and spoke to her. The parties dispute whether plaintiff was in fact asleep when Lefebvre entered the nursery. None-theless, the security guard filed a written report alleging that plaintiff had been asleep while on duty in the nursery.

After receiving this report, Patricia Duc-los–Miller, the Director of Perinatal Services, spoke with plaintiff, Lucille Lefebvre, Roy Zettlemoyer, Director of Security, John McGlew, an employee of the Human Re-sources department, and Teresa Kukolja, As-sistant Vice President for Nursing. Duclos–Miller also spoke with Corrine Valentine, plaintiff's immediate supervisor and Paula Steele, Assistant Manager for Patient Care. Defendant argues that all of Duclos–Miller's conversations regarding the allegations against plaintiff were conducted for the pur-pose of determining the scope of the investi-gation and any appropriate disciplinary mea-sures. Plaintiff disagrees, contending that Duclos–Miller held these conversations to

gossip about plaintiff. Notwithstanding this dispute, the parties agree that following these discussions with members of the hospital staff, Duclos–Miller placed plaintiff on suspension pending completion of an investigation into the alleged incident. On June 29, 1993, Duclos–Miller terminated plaintiff's employment.

During the two weeks subsequent to plaintiff's dismissal, Dr. Rajit Pandit, a pediatrician who worked at Bristol Hospital as an independent contractor, was informed of the circumstances surrounding plaintiff's dismissal. Plaintiff contends that Dr. Pandit learned of her dismissal through a member of the hospital staff. Defendant argues that Dr. Pandit may have been informed by plaintiff or Lucille Lefebvre. Dr. Pandit further discussed the circumstances surrounding plaintiff's discharge with a former employee of Bristol Hospital, a visitor to Dr. Pandit's private office.

During this same two week period following her dismissal, plaintiff received numerous phone calls from other nurses employed by defendant. While plaintiff denies disclosing the circumstances surrounding her termination during these phone conversations, it is not disputed that there were general discussions among the nurses about the reasons for plaintiff's absence from the hospital.

## Discussion

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. *American International Group, Inc. v. London American International Corp.,* 664 F.2d 348, 351 (2d Cir.1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). "Only when reasonable minds could not differ as to the

import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.) *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

■ Plaintiff has alleged that defendant published the circumstances surrounding her dismissal from employment at the hospital to a group of her co-workers as well as to Dr. Pandit. Plaintiff claims that this publicity, made in reckless disregard of the truth or falsity of the statement, constitutes an invasion of her privacy by casting her before the public in a false light. Defendant argues that summary judgment is appropriate as a matter of law because any disclosure it may have made with respect to the circumstances surrounding plaintiff's dismissal does not constitute publicity of information casting plaintiff in a false light.

■ Connecticut courts have recognized a cause of action for invasion of privacy, and in doing so have adopted the 3 Restatement (Second) of Torts formulation of that action. *Goodrich v. Waterbury Republican–American Inc.,* 188 Conn. 107, 126–28, 448 A.2d 1317 (1982). The Restatement recognizes four specific categories of invasion of privacy: 1) unreasonable intrusion on the seclusion of another; 2) appropriation of the other's name or likeness; 3) unreasonable publicity given to the other's private life; and 4) publicity that unreasonably places the other in a false light before the public. 3 Restatement (Second) of Torts § 652A (1977). Here, plaintiff's claim falls under the fourth category, false light invasion of privacy. 3 Restatement § 652E, defines a false light invasion of privacy as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

3 Restatement (Second) Torts § 652E (1977). An essential element of a false light invasion

of privacy claim is that the defendant gives publicity to false information. *Handler v. Arends,* 1995 WL 107328, at *11 (Conn.Super.Ct. March 1, 1995). The Connecticut appellate courts have not expressly defined the term "publicity" as it applies to a false light invasion of privacy claim. In *Handler,* the court adopted the definition of publicity contained in 3 Restatement (Second) Torts § 652D which states that a "matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." 3 Restatement (Second) Torts § 652D, cmt. a (1977). This definition clearly distinguishes "publicity" in the invasion of privacy context from "publication" in an action for defamation which includes "any communication by the defendant to a third person."

■ In *Handler,* the court granted summary judgment to the defendant, a university official who had read aloud to ten of the plaintiff's co-workers a memorandum inaccurately portraying the circumstances surrounding the denial of the plaintiff's application for tenure. The court found that the defendant's actions were insufficient to support a claim of false light invasion of privacy. To establish the essential element of "publicity", the plaintiff must produce "proof not merely of limited, private communication to one or more other persons, but of widespread communication to the general public or a significant segment thereof." *Handler v. Arends,* 1995 WL 107328, at *11. The court reasoned that the defendant's reading of the memorandum constituted only a private, business communication to a small group of persons, not the giving of "publicity." *Handler,* 1995 WL 107328, at *13. Accordingly, the court found that no genuine issue of material fact existed as to the defendant's giving publicity to false information.

Other courts faced with similar situations have reached the same conclusion. In *Rogers v. International Business Machines Corp.,* 500 F.Supp. 867, 870 (W.D.Pa.1980), the court granted summary judgment on an

invasion of privacy claim to the defendant employer, stating that when "information [is] conveyed only to employees [ ] with a duty, responsibility and a need for such information" there is not sufficient publicity to support an action for invasion of privacy.[1] This standard was refined in *Wells v. Thomas,* 569 F.Supp. 426 (E.D.Pa.1983), where, following the plaintiff's dismissal as the defendant's director of personnel, the terms of her separation agreement became the subject of general discussion among the defendant's employees. In granting the defendant's motion for summary judgment on the plaintiff's invasion of privacy claim, the court reasoned that other employees would clearly want to know the reasons for her absence. "Imparting this information at a staff meeting or in response to individual questions by employees would be appropriate and would not constitute publication." *Wells,* 569 F.Supp. at 437.

In this case, Duclos–Miller's discussion of the allegations against plaintiff, and potential disciplinary action, in private conversations with other members of the hospital management does not establish the requisite level of publicity for an invasion of privacy action. Each of these individuals, by nature of their positions, appear to have a duty or responsibility to be made aware of such circumstances. Without determining the motivation behind these discussions, disclosure of the circumstances surrounding plaintiff's termination to these persons is not an invasion of plaintiff's privacy. Likewise, plaintiff's assertion that the reasons for her dismissal became common knowledge in the Bristol Hospital community "would not constitute 'publicity' but a mere spreading of the word by interested persons in the same way rumors are spread." *Wells,* 569 F.Supp. at 437. Plaintiff's co-workers were naturally curious about the reasons for plaintiff's absence from the hospital. This curiosity is evidenced by the fact that many co-workers telephoned plaintiff at home to discuss the matter. Although her co-workers may not have had a duty or a responsibility to know the circumstances surrounding plaintiff's dismissal, the fact that they may have been so informed is not an invasion of plaintiff's privacy.

---

1. *Rogers* involved a claim for invasion of privacy by publicity given to the plaintiff's private life, under 3 Restatement (Second) Torts § 652D, rather than false light invasion of privacy under § 652E. However, the standard for publicity is the same under both sections.

**632**

With respect to Dr. Pandit, assuming he learned of the circumstances surrounding plaintiff's dismissal from defendant, it would not constitute an invasion of plaintiff's privacy. Even though he is employed by defendant as an independent contractor, he was plaintiff's co-worker and would likely have an interest, or feel a need to know, the reasons for plaintiff's absence. Similarly, Pandit's discussion of plaintiff's termination with a former employee of Bristol Hospital during a patient examination at his private office does not aid plaintiff's cause. Even if this disclosure were fairly attributable to defendant, which is questionable considering Dr. Pandit's status as an independent contractor, it is neither a communication to the public at large nor one that is certain to become a matter of public knowledge. There was simply no disclosure of information regarding the circumstances of plaintiff's discharge to the general public or a significant segment thereof.

Having resolved all ambiguities in favor of plaintiff, defendant's dissemination of information with respect to the circumstances surrounding plaintiff's dismissal from employment to a discrete number of hospital management personnel, interested co-workers and Dr. Pandit does not rise to the level of publicity contemplated by 3 Restatement (Second) Torts § 652E. While this court is not bound by the decisions in *Handler, Rogers, or Wells,* the court finds their reasoning persuasive. Moreover, there is no reason to believe that the Connecticut Supreme Court would reach a contrary conclusion. This court concludes that defendant did not give publicity to information that would place plaintiff in a false light before the public and that defendant is entitled to judgment as a matter of law on this claim.

### Conclusion

For the foregoing reasons, defendant's motion for partial summary judgment [# 25] as to Count Three of plaintiff's complaint is GRANTED.